AUSTIN *v.* BARLEY MOTOR CAR CO.

1. ESTOPPEL. — LETTERS CLAIMING EXISTENCE OF RIGHT ESTOPS PARTY FROM ASSERTING RIGHT HAD BEEN RELINQUISHED.

In an action by an inventor of a patent spring against an automobile company for the amount due under the terms of a contract giving it the right to the exclusive use of

said spring, it is estopped from relying on a claimed oral notice to plaintiff relinquishing its exclusive rights, where, in its correspondence with him subsequent thereto, it indicated that it still retained said rights.[1]

2. CONTRACTS—NOTICE—SUFFICIENCY.

Where, under its contract with the inventor, an automobile company had the right, by giving 90 days' notice, to relinquish its exclusive right to the use of a patent spring, for which it paid a certain sum per month, and pay on the basis of a certain sum per car, a letter to the inventor stating it was renewing its notice that it would give up its exclusive rights and settle on the other basis, *held*, sufficient notice, and the new basis of settlement became effective 90 days thereafter.[2]

Error to superior court of Grand Rapids; Verdier (Leonard D.), J.    Submitted January 21, 1926. (Docket No. 43.)    Decided March 20, 1926.    Rehearing denied June 8, 1926.

Assumpsit by Walter S. Austin against the Barley Motor Car Company for an amount due under a royalty contract.    Judgment for plaintiff on a directed verdict.    Defendant brings error.    Affirmed, conditionally.

*Payne & Payne* and *Harry C. Howard*, for appellant.

*Ward & Strawhecker*, for appellee.

CLARK, J.    Plaintiff owned a patent covering a type of automobile spring.    Defendant was a manufacturer of automobiles.    On August 1, 1919, they contracted that defendant have exclusive license to use that type of spring in manufacture.    Defendant, as first party, agreed to pay, quoting from the contract:

"As a consideration for the above exclusive license * * * the sum of $500 per month, payable on the first day of each and every month during the life of this agreement, the first $500 payment to be made upon the signing of this agreement."

---

[1]Estoppel, 21 C. J. § 226; [2]Contracts, 13 C. J. § 636.

And further:

"It is further agreed that if at any time during the life of this agreement the party of the first part elects to do so he can cancel the present method of payment by notifying the party of the second part ninety days in advance of his intention to do so, and that at the end of ninety days they may pay the license fee to the party of the second part at the rate of $2 per car instead of $500 monthly, and that such notification will automatically cancel the party of the second part's exclusive right to use this patent spring construction."

Defendant made the monthly payments until November 1, 1920, when it ceased paying. Plaintiff's declaration filed in November, 1922, sought to recover the amount of 25 of the monthly installments, in the aggregate $12,500. The defense was that late in October, 1920, defendant gave to plaintiff the notice provided by the contract of its determination to surrender the exclusive feature of the contract, and, at the expiration of the 90-day period, to cease paying monthly, and to begin paying the license fee of $2 per car manufactured thereafter. Defendant, assuming that such notice had been given, computed the amount due on the contract to be about $2,600. Plaintiff's position is that no such notice was given, and that, in any event, defendant is estopped to assert such notice because of the correspondence which passed between the parties, chiefly over a period beginning October 27, 1920, and ending March 22, 1921.

The contract contained a further provision:

"Party of the second part agrees to fully co-operate with the party of the first part by giving the party of the first part such information and data as may be required to insure party of the first part getting the best possible results from the spring construction which is the subject of this license agreement, all of this to be without cost to the party of the first part."

With its plea defendant gave notice that it would

insist that plaintiff had breached the above provision to the damage of defendant in a sum far in excess of plaintiff's demand, and that it would recoup such damages and ask judgment in its favor.     Plaintiff had judgment on directed verdict for the total of 26 months, at $500 per month, $13,000 and interest.     Defendant brings error.

An officer of defendant testified of a telephonic conversation with plaintiff on October 30, 1920:

"Mr. Austin, I haven't had any reply to my letter of October 27th, and I can't afford to get stuck for another month at $500 a month, and the only thing we can do is to go on the $2 per car basis, and relinquish the exclusive right to the spring, and I am herewith giving you notice that we are going on that basis.'

And it is said that the substance of the conversation was repeated at a later date.     Upon these conversations defendant's claim of notice as of October 30th must rest.     Plaintiff denied any such conversations. But the trial court held that defendant, because of the letters which passed between the parties, was estopped to rely on the claimed notice of October 30th.

We can give but fragmentary quotations from the letters.     Defendant's letter of October 27th:

"Referring to the contract between us regarding paying of royalty on spring construction.

"You are no doubt aware of the conditions existing in the automobile industry at this time and we are frank to say that we have been as hard hit as any of them and we are herewith advising you that we cannot continue to pay you the royalty specified in this contract, and unless some revision can be made at this time, we will either have to discontinue the use of the springs which have given us a devil of a lot of trouble or will have to give you notice as provided in the contract.

"Please let us hear from you at once so we can govern ourselves accordingly."

And of November 6th:

"I sent you a rather important letter under date of October 27th and expected to have a reply before this date."

Plaintiff's letter of December 1st:

"When I was at your factory the other day Mr. Hopkins intimated that you would appreciate any concessions that I might, for a limited period, be willing to allow on the payments due under our contract.

"Therefore, if you will immediately send me a check for the $500 due November 1st, you may also enclose your four-months note, dated December 1st for the payment due today, and you may also send $250 in cash, and a like amount in four months' notes for the payments due in January, February and March, 1921, the notes to bear interest at six per cent."

Defendant's letter of December 1st:

"On making inquiries Monday about the November check, I found that the reason that this was not sent to you on schedule time was that we were short of funds and had already written you about coming down for an interview to see if we would not be relieved to some extent in line with the conversation which you had with Mr. Barley and the writer when you were here on Friday.

"We certainly hope that you have talked this over with your father and have decided that you can meet our views for a period of four to six months, or during this period of depression.    In fact what we should like is to have this go into effect on November 1st."

Defendant's letter of December 6th:

"The writer has read the second paragraph of your letter a number of times and will have to confess that he does not exactly get your meaning.    One time when I read it I interpret it that starting with the 1st of December and for that month, January, February and March you are willing to reduce the monthly payments to $250.    The next time I read it I would understand that you are willing to take our notes instead of our check and in that case for the full amount for six months, viz.: $500.

"My first thought was to write and ask you for a

further explanation of the concession you are making, but in order that no further time may be lost, it would really seem advisable for us to release the exclusive feature and revert to the payment of $2 per car instead of $500 monthly. We are only making about fifty cars per month at the present time which of course would effect a saving over the $500 monthly payment. In fact I think Mr. Barley wrote you giving notice to this effect the latter part of October."

Plaintiff's letter of December 20th:

"If you should decide to discontinue the exclusive feature of the contract you should send me full cash payments, also you should send me a definite notice so that I may be at liberty to make agreements with other parties.

"At the present time I am not at liberty to do so and I do feel that the yearly amount that you pay under this contract is certainly little enough considering the exclusive feature."

Defendant's letter of January 5th:

"If you will reduce the monthly payments of $500 to $250, this to be for a six-months period starting with November 1st and ending in April, then we will agree—when business improves and we are manufacturing and shipping in excess of 250 cars per month —to give you payment of $2 per car above the $250 until we have reimbursed to you this difference between $500 and $250 for this six-months period."

We have quoted enough of the correspondence to indicate the basis of the holding of the trial judge. Plaintiff's situation is fairly stated in his letter of December 20th, above quoted. The license was valuable. Defendant desired to retain the exclusive right to use the spring. While it retained such right, plaintiff could not dispose of it to others. Defendant indicated by its letters that it retained the right. To the prejudice of plaintiff and against its own writings, it is estopped to assert that it orally surrendered the right as claimed.

But on March 22d defendant wrote to plaintiff:

"I can see no other way inasmuch as you do not seem willing to help us out for the six-months period by reducing the monthly payments, that we should give up the exclusive feature and pay only the amount per car as per notice which Mr. Barley sent you back in October.

"In other words, will have to renew this notice to you for the payment of $2 per car and we will settle for the past months on that basis."

This letter speaks of a notice *sent* in October, and refers to letter of October 27th, which was not a notice. We think the letter of March 22d was a notice and that under the terms of the contract the $2 basis became effective 90 days thereafter.

Treating the letter of March 22d as a notice, counsel for defendant say:

"The plaintiff's claim would then be:

  8 months at $500.00 . . . . . . . . . . . . . . $4,000.00
  553 cars at $2.00 . . . . . . . . . . . . . . . .  1,106.00

  Total  . . . . . . . . . . . . . . . . . . . . . . . $5,106.00."

When interest is added, the total of plaintiff's claim at the time of trial was $6,025.

To review the evidence relative to defendant's counter-claim would prolong this opinion unduly. We have read the record and considered the briefs, and are in accord, in that regard, with the trial judge.

If within 30 days from the filing hereof plaintiff will remit his judgment down to $6,025, it will be affirmed in that amount, with costs of this court to defendant. If plaintiff does not remit, the judgment will be reversed, new trial granted, costs to abide the result.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.    SNOW, J., did not sit.